Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETH R. NAUGLE, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ARMO BIOSCIENCES, INC., PETER VAN VLASSELAER, XIANGMIN CUI, CARL GORDON, PIERRE LEGAULT, NAIYER RIZVI, BETH SEIDENBERG, and STELLA XU, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Jeaneth R. Naugle ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1.     This is an action against ARMO BioSciences, Inc. ("ARMO" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer on a proposed transaction, pursuant to which ARMO will be acquired by Eli Lilly and Company ("Parent") through its wholly owned subsidiary Bluegill Acquisition Corporation ("Purchaser") (the "Proposed Transaction").

2.     On May 10, 2018, ARMO and Parent issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 9, 2018 (the "Merger Agreement") to sell ARMO to Parent.   Under the terms of the Merger Agreement, Offeror commenced a tender offer (the "Offer") to purchase all of the outstanding shares of ARMO common stock for $50.00 per share.

3.     The Proposed Transaction is valued at approximately $1.6 billion.  The Purchaser commenced the Offer on May 23, 2018 and the Offer is set to expire at one minute past 11:59 p.m. Eastern Time on June 21, 2018.

4.     On May 23, 2018, ARMO filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.   The Recommendation Statement, which recommends that ARMO stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) ARMO's financial projections, relied upon by ARMO's financial advisor Centerview Securities LLC ("Centerview"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; (iii) the background process leading to the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Proposed Transaction; and (iv) Centerview and Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as ARMO stockholders need such information in order to make a fully informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

5.    In short, the Proposed Transaction will unlawfully divest ARMO's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Offer unless and until such problems are remedied.

**JURISDICTION AND VENUE**

6.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.    The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   ARMO is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

9.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of ARMO.

10.     Defendant ARMO is a late-stage immuno-oncology company.  ARMO is a Delaware corporation with its principal executive offices located at 575 Chesapeake Drive, Redwood City, California 94063.  The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ARMO."

11.     Defendant Peter Van Vlasselaer ("Van Vlasselaer") is the Company's co-founder and has been Chief Executive Officer ("CEO"), President and a director of the Company since December 2012.  As of May 9, 2018, defendant Van Vlasselaer owned 809,865 shares of Company common stock, or approximately 2.7% of the Company's outstanding shares.

12.     Defendant Xiangmin Cui ("Cui") has been a director of the Company since August 2017.  Defendant Cui is the founder and a managing director since 2011 of Decheng Capital China Life Sciences USD Fund II, L.P. ("Decheng Capital"), which beneficially owns approximately 4.0% of the Company's outstanding shares.

13.     Defendant Carl Gordon ("Gordon") has been a director of the Company since December 2012.  Since 1998, defendant Gordon has been a partner and co-head of global private equity at OrbiMed Advisors LLC ("OrbiMed"), which beneficially owns approximately 13.6% of the Company's outstanding shares.

14.     Defendant Pierre Lagault ("Lagault") has been a director of the Company since April 2017.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.     Defendant Naiyer Rizvi ("Rizvi") has been a director of the Company since June 2017.

16.     Defendant Beth Seidenberg ("Seidenberg") has been a director of the Company since December 2012.  Since May 2005, defendant Seidenberg has been a partner at Kleiner Perkins Caufield & Byers ("Kleiner Perkins"), ARMO's largest stockholder which beneficially owns approximately 14.0% of the Company's outstanding shares.

17.     Defendant Stella Xu ("Xu") has been a director of the Company since August 2017. Since August 2017, defendant Xu has also served as a managing director of Quan Venture Fund I, L.P. ("Quan Capital" and, together with Kleiner Perkins, OrbiMed, Decheng Capital and defendant Van Vlasselaer, the "Supporting Stockholders"), which beneficially owns approximately 1.3% of the Company's outstanding shares.

18.     Defendants Van Vlasselaer, Cui, Gordon, Lagault, Rizvi, Seidenberg, and Xu are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19.     Parent discovers, develops, manufactures and markets products in two business segments: human pharmaceutical products and animal health products.  It is an Indiana corporation with its principal executive offices located at Lilly Corporate Center, Indianapolis, Indiana 46285. Parent's common stock is traded on the New York Stock Exchange under the ticker symbol "LLY."

20.     Purchaser is a Delaware corporation and a wholly owned subsidiary of Parent.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

21.     ARMO is a late-stage immuno-oncology company developing a pipeline of novel, proprietary product candidates that activate the immune system of cancer patients to recognize and eradicate tumors.  The Company's lead product candidate, AM0010 (pegilodecakin), stimulates the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

survival, expansion and tumor killing capacity of a particular white blood cell of the immune system, the CD8+ T cell.  ARMO has focused its research and development on CD8+ T cells because they have been shown to recognize and kill cancer cells.

22.     AM0010 is currently in a Phase 3 pivotal clinical trial for the treatment of pancreatic ductal adenocarcinoma ("PDAC").  The clinical trial studies AM0010 plus FOLFOX, versus FOLFOX alone, in patients with PDAC.  On March 26, 2018, the Company announced the completion of the first interim analysis in the Phase 3 trial.  Based on the results, the Data Monitoring Committee ("DMC") recommended that the study continue without modification.  The second interim analysis and final analysis are both expected to be conducted in 2020.  The U.S. Food and Drug Administration ("FDA") and the European Commission ("EC") have granted pegilodecakin orphan drug designation for the treatment of pancreatic cancer.

23.     The Company also has two product candidates in the Pre-Investigational New Drug Application stage.  One of these, AM001, is a monoclonal antibody that activates CD8+ T cells by blocking the interaction between two checkpoint inhibitors ("PD-1" and "PD-L1").  Combining cancer immunotherapies with anti PD-1 immune checkpoint inhibitors has become a widespread approach in oncology and the biotech industry.  As such, ARMO has faced competition from larger pharmaceutical companies in the oncology immunotherapy space.

24.     On April 2, 2018, the Company announced its fiscal year 2017 financial results.  ARMO reported net loss of $42.4 million for the year and research and development expenses of $37.2 million, primarily due to the commencement of the AM0010 Phase 3 clinical trial.  Despite these challenges, defendant Van Vlasselaer highlighted the Company's progress, stating:

> 2017 was a great year for ARMO as we advanced the development of AM0010 as an immuno-oncology therapeutic. . . .  In the first quarter of 2018 we have already completed our over-subscribed initial public offering, successfully cleared the first interim analysis in the SEQUOIA trial in pancreatic cancer, and have now dosed the first patients in both our CYPRESS 1 and CYPRESS 2 NSCLC Phase 2 trials.  With first looks at CYPRESS data, the commencement of a clinical trial in Renal Cell

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Carcinoma (RCC) and the commencement of a Phase 1 dose escalation trial of our anti-PD-1 checkpoint inhibitor (AM0001) all expected by the end of the year, 2018 is shaping up to be another exciting year for ARMO.

Subsequent to year-end 2017, ARMO completed its initial public offering ("IPO") at a price of $17.00 per share and began publicly trading on January 26, 2018.

**The Sale Process**

25.     Following the filing of ARMO's initial registration statement on Form S-1 with the SEC on December 29, 2017 in connection with its IPO, the Company received inquiries from multiple third parties regarding potential interest in ARMO and certain of its product candidates.

26.     In the first quarter of 2018, a senior executive of a large pharmaceutical company referred to in the Recommendation Statement as "Company A" indicated Company A was interested in pursuing a strategic acquisition of ARMO.  On January 29, 2018, ARMO and Company A entered into a non-disclosure agreement with customary standstill provisions.

27.     On March 9, 2018, executives from Company A orally delivered a non-binding indication of interest to acquire the Company for $60.00 per share.

28.     On March 12, 2018, Clinton Musil, ARMO's Vice President of Corporate Development, met with the vice president of worldwide business development of a large pharmaceutical company referred to in the Recommendation Statement as "Company B."  Two days later, on March 14, ARMO and Company B entered into a non-disclosure agreement with customary standstill provisions.  Company B subsequently engaged in due diligence, but in early April 2018, Company B indicated it was no longer interested in pursuing a transaction.

29.     Also on March 14, 2018, a representative of a large pharmaceutical company referred to in the Recommendation Statement as "Company C" indicated Company C would evaluate its interest in acquiring ARMO.  ARMO and Company C subsequently entered into a non-disclosure agreement with customary standstill provisions on March 26, 2018.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

30.     On March 16, 2018, representatives from Parent indicated they had a high level of interest in pursuing a strategic transaction involving ARMO.  On March 19, 2018, ARMO and Parent entered into a non-disclosure agreement with customary standstill provisions.

31.     Also on March 19, 2018, ARMO formally engaged Centerview as its financial advisor in connection with its exploration of strategic alternatives.

32.     On March 23, 2018, Company A submitted a revised proposal with an increased purchase price of $65.00 per share.

33.     On April 13, 2018, Parent delivered a non-binding indication of interest to acquire the Company for $55.00 per share.

34.     On April 16, 2018, a large pharmaceutical company released positive pivotal results from a late-stage clinical trial for an oncology product in ARMO's competitive landscape.  Shortly thereafter, Company A and Company C indicated they were no longer interested in pursuing a transaction with ARMO.

35.     On May 7, 2018, Parent submitted a revised proposal, decreasing its proposed purchase price to $48.00 per share.  The next day, Parent again submitted a revised proposal, reflecting a purchase price of $50.00 per share.

36.     On May 9, 2018, the Board met and Centerview delivered to the Board its fairness opinion.  Following the meeting, the parties executed the Merger Agreement.

37.     The next day, ARMO and Parent issued a joint press release announcing entry into the Merger Agreement.  The press release stated, in relevant part:

> INDIANAPOLIS and REDWOOD CITY, Calif., May 10, 2018 -- Eli Lilly and Company (NYSE: LLY) and ARMO BioSciences, Inc. (NASDAQ: ARMO) today announced a definitive agreement for Lilly to acquire ARMO for $50 per share, or approximately $1.6 billion, in an all-cash transaction. ARMO BioSciences is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates designed to activate the immune system of cancer patients to recognize and eradicate tumors.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The acquisition will bolster Lilly's immuno-oncology program through the addition of ARMO's lead product candidate, pegilodecakin, a PEGylated IL-10 which has demonstrated clinical benefit as a single agent, and in combination with both chemotherapy and checkpoint inhibitor therapy, across several tumor types. Pegilodecakin is currently being studied in a Phase 3 clinical trial in pancreatic cancer, as well as earlier-Phase trials in lung and renal cell cancer, melanoma and other solid tumor types. ARMO also has a number of other immuno-oncology product candidates in various stages of pre-clinical development.

"At Lilly Oncology, we are dedicated to developing cancer medicines that will make a meaningful difference for patients," said Sue Mahony, Ph.D., Lilly senior vice president and president of Lilly Oncology. "The acquisition of ARMO BioSciences adds a promising next generation clinical immunotherapy asset to Lilly's portfolio of innovative oncology medicines."

"As we develop our immuno-oncology portfolio, Lilly will pursue medicines that use the body's immune system in new ways to treat cancer," added Levi Garraway, M.D., Ph.D., senior vice president, global development and medical affairs, Lilly Oncology, "We believe that pegilodecakin has a unique immunologic mechanism of action that could eventually allow physicians to offer new hope for many cancer patients."

"ARMO is proud of the work we have done to advance the study of immunotherapies and of the development of pegilodecakin to-date," said Peter Van Vlasselaer, Ph.D., President and Chief Executive Officer of ARMO BioSciences. "Given the resources that Lilly, a leader in oncology R&D, can bring to bear to maximize the value of pegilodecakin and the rest of the ARMO pipeline, we believe it is in the best interest of ARMO, our stockholders and the patients we serve, to execute this transaction."

Under the terms of the agreement, Lilly will promptly commence a tender offer to acquire all shares of ARMO BioSciences for a purchase price of $50 per share in cash, or approximately $1.6 billion. The transaction is expected to close by the end of the second quarter of 2018, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of ARMO's common stock. Very shortly after the closing of the tender offer, Lilly will acquire any shares of ARMO that are not tendered into the tender offer through a second-step merger at the tender offer price.

**Insiders' Interests in the Proposed Transaction**

38.     Parent and ARMO insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of ARMO.

- 9 -

39.     Notably, ARMO's non-employee directors stand to reap substantial financial benefits for securing the deal with Parent.  Each unexpired, unexercised stock option whether vested or unvested, held by the Company's non-employee directors will be converted into the right to receive cash payments.  The following table summarizes the cash payments the Company's non-employee directors stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| | Acceleration of Vesting of Equity Awards($)(1) | Total Payout($) |
|---|---|---|
| Xiangmin Cui, Ph.D. | $ 170,510.00 | $ 180,540.00 |
| Carl Gordon, Ph.D. | $ 170,510.00 | $ 180,540.00 |
| Pierre Legault | $ 1,929,779.93 | $ 2,593,251.82 |
| Naiyer Rizvi, M.D. | $ 809,068.48 | $ 1,008,905.11 |
| Beth Seidenberg, M.D. | $ 170,510.00 | $ 180,540.00 |
| Stella Xu, Ph.D. | $ 170,510.00 | $ 180,540.00 |

40.     Additionally, the non-employee directors and executive officers or their affiliates stand to receive over $540,752,550.00 if the Proposed Transaction is consummated, as set forth in the following table:

| | Number of Shares Owned | Value of Shares Owned($) |
|---|---|---|
| *Executive Officers:* | | |
| Peter Van Vlasselaer, Ph.D. | 809,865 | $ 40,493,250.00 |
| Herb Cross | — | — |
| Joseph Leveque, M.D. | — | — |
| *Non-Employee Directors:* | | |
| Xiangmin Cui, Ph.D.(1) | 1,214,700 | $ 60,735,000.00 |
| Carl Gordon, Ph.D.(2) | 4,118,903 | $ 205,945,150.00 |
| Pierre Legault | — | — |
| Naiyer Rizvi, M.D. | — | — |
| Beth Seidenberg, M.D.(3) | 4,266,683 | $ 213,334,150.00 |
| Stella Xu, Ph.D.(4) | 407,400 | $ 20,245,000.00 |
| Total | 10,815,051 | $ 540,752,550.00 |

41.     Moreover, if they are terminated in connection with the Proposed Transaction within 12 months following the merger, ARMO's named executive officers stand to receive substantial

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| | Cash Severance Payment($) | Continuation of Benefits($)(1) | Acceleration of Vesting of Equity Awards($)(2) | Total Payout ($) |
|---|---|---|---|---|
| Peter Van Vlasselaer, Ph.D. | 1,267,995 | 23,327 | 17,319,817 | 18,611,139 |
| Herb Cross | 571,442 | 15,285 | 10,355,571 | 10,942,297 |
| Joseph Leveque, M.D. | 705,706 | 21,717 | 12,426,659 | 13,154,081 |

**<u>The Recommendation Statement Contains Material Misstatements or Omissions</u>**

42.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to ARMO's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Offer or seek appraisal.

43.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) ARMO's financial projections, relied upon by ARMO's financial advisor Centerview; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview; (iii) the background process leading to the Proposed Transaction; and (iv) Centerview and Company insiders' potential conflicts of interest. Accordingly, ARMO stockholders are being asked to make a decision whether to tender their shares in connection with the Offer or seek appraisal without all material information at their disposal.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Material Omissions Concerning ARMO's Financial Projections*

44.     The Recommendation Statement is materially deficient because it fails to disclose

material information relating to the Company's intrinsic value and prospects going forward.

45.     First, the Recommendation Statement omits material information regarding ARMO

management's financial projections and the financial analyses performed by the Company's

financial advisor, Centerview.

46.     For example, the Recommendation Statement states:

> ARMO management prepared the projections set forth below and delivered to the
> ARMO Board and Centerview based on historical financial statements as well as a
> series of assumptions and estimates related to future results that it believed to be
> reasonable at the time, including assumptions and estimates relating to the
> probability of regulatory success of its product development candidates and, in the
> case of AM0010, commercial launch success, market size, market share,
> competition, pricing, reimbursement, research and development expenses, sales,
> general and administrative expenses, contractual relationships, effective tax rate and
> utilization of net operating losses and other relevant factors relating to ARMO's
> long-range operating plan, as well as how certain of these assumptions and estimates
> may change over time.

Recommendation Statement at 26.  The Recommendation Statement fails, however, to quantify or

disclose any information related to: (i) the probability of regulatory success of its product

development candidates; and (ii) with respect to AM0010, management's assumptions regarding its

(a) commercial launch success, (b) market size, (c) market share, (d) competition, (e) pricing, (f)

reimbursement, (g) research and development expenses, (h) sales, (i) general and administrative

expenses, (j) contractual relationships, (k) effective tax rate and utilization of net operating losses,

(l) the other relevant factors relating to ARMO's long-range operating plan, and (m) how certain of

the assumptions and estimates may change over time.

47.     The Recommendation Statement also sets forth:

> In performing [its Discounted Cash Flow] analysis, Centerview calculated a range of
> equity values for ARMO by (a) discounting to present value as of June 30, 2018
> using discount rates ranging from 12.5% to 14.5% (reflecting Centerview's analysis
> of ARMO's weighted average cost of capital) and the mid-year convention: (i) . . .

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

(iii) net present value of tax savings from usage of federal net operating losses and future losses and adding to the foregoing results, (iv) ARMO's estimated net cash balance as of June 30, 2018, as set forth in the Internal Data. . . .

Recommendation Statement at 33.  The Recommendation Statement fails, however, to disclose (i) the Company's net operating loss forecasts, and (ii) ARMO's estimated net cash balance as of June 30, 2018, relied upon by Centerview in its analysis.

48.     The Recommendation Statement further fails to set forth the Company's definition of unlevered free cash flow or the line item projections used to calculate the Company's unlevered free cash flow.

49.     The omission of this information renders the statements in the "Certain Financial Projections" and "Opinion of Centerview Partners LLC, Financial Advisor to ARMO" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

50.     The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, ARMO's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in connection with the Offer or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to ARMO's stockholders.

51.     With respect to Centerview's *Selected Public Company Analysis*, the Recommendation Statement fails to disclose: (i) the operational, business and/or financial characteristics that Centerview observed for ARMO and each of the selected publicly traded

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

biopharmaceutical companies; and (ii) ARMO's estimated net cash as of June 30, 2018.

52.     With respect to Centerview's *Selected Precedent Transaction Analysis*, the Recommendation Statement fails to disclose: (i) the operational, business and/or financial characteristics that Centerview observed for ARMO and each target company.

53.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs underlying the discount rate range of 12.5% to 14.5%; (ii) ARMO's estimated net cash as of June 30, 2018; (iii) net present value of tax savings from usage of federal net operating losses and future losses; and (iv) the value of preclinical non-AM0010 pipeline based on the median pre-money valuation of a select set of pre-clinical / early-stage oncology companies in initial public offerings.

54.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

55.     The omission of this information renders the statements in the "Opinion of Centerview Partners LLC, Financial Advisor to ARMO" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

56.     In addition, the Recommendation Statement omits material information relating to the sale process leading up to the Proposed Transaction.

57.     Critically, the Recommendation Statement fails to expressly indicate whether the confidentiality agreements including standstill provisions that ARMO entered into with prospective bidders, excluding Parent, are still in effect and/or contain "don't ask, don't waive" ("DADW") standstill provisions that are presently precluding each and every one of these prospective bidders from making a topping bid for the Company.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

58.     The disclosure of the terms of the standstill provisions in the confidentiality agreements ARMO entered into with potential buyers is crucial to ARMO stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

59.     The omission of this information renders the statements in the "Background of the Transaction" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest***

60.     Further, the Recommendation Statement fails to disclose material information related to potential conflicts of interest faced by the Company's financial advisor, Centerview. Specifically, the Recommendation Statement fails to disclose material information concerning the fees received by Centerview for any past work performed for the Supporting Stockholders.

61.     The Recommendation Statement sets forth that:

Centerview is a securities firm engaged directly and through affiliates and related persons in a number of investment banking, financial advisory and merchant banking activities. In the two years prior to the date of its written opinion Centerview did not provide financial advisory or other services to ARMO or Parent for which it received any compensation. Centerview may provide financial advisory and other services to or with respect to ARMO or Parent or their respective affiliates in the future, for which Centerview may receive compensation. Certain (i) of Centerview and its affiliates' directors, officers, members and employees, or family members of such persons, (ii) of its affiliates or related investment funds and (iii) investment funds or other persons in which any of the foregoing may have financial interests or with which they may co-invest, may at any time acquire, hold, sell or trade, in debt, equity and other securities or financial instruments (including derivatives, bank loans or other obligations) of, or investments in, ARMO, Parent or any of their respective affiliates, or any other party that may be involved in the Transactions.

Recommendation Statement at 34-35.  The Recommendation Statement fails, however, to disclose any fees received by Centerview for services performed for the Supporting Stockholders.

62.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection,

and implementation of strategic alternatives.  ARMO stockholders need to be provided with the historical fees received by Centerview for work performed on behalf of the Supporting Stockholders to determine if Centerview had any historical relationships with the Supporting Stockholders who have outsized influence on the Company and that would have pushed Centerview to support a sale of the Company and impacted their financial analyses provided to the Board.

63.    In addition, the Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by ARMO insiders.

64.    The Recommendation Statement sets forth that:

> To our knowledge, except for certain agreements described in this Schedule 14D-9 (or in the documents incorporated by reference herein) between ARMO and its executive officers and directors, no employment, equity contribution or other agreement, arrangement or understanding between any executive officer or director of ARMO, on the one hand, and Parent, Purchaser, any of their affiliates or ARMO, on the other hand, existed as of the date of this Schedule 14D-9, and neither the Offer nor the Merger is conditioned upon any executive officer or director of ARMO entering into any such agreement, arrangement or understanding.

> *Although such arrangements have not, to ARMO's knowledge, been discussed as of the date of this Schedule 14D-9*, it is possible that additional members of our current management team will enter into new employment or consulting arrangements with the surviving corporation. Such arrangements may include the right to participate in the equity of Parent or its affiliates. Any such arrangements with the existing management team *are currently expected* to be entered into after the completion of the Offer and will not become effective until after the Merger is completed, if at all. There can be no assurance that the applicable parties will reach an agreement on any terms, or at all.

Recommendation Statement at 9 (emphasis added).  The Recommendation Statement fails to disclose how, to ARMO's knowledge, arrangements for its current management team to enter into new employment or consulting arrangements with the surviving corporation have not been discussed, yet any such arrangements with the existing management team *are currently expected* to be entered into after the completion of the Offer.  The Recommendation Statement must clarify what it deems to constitute discussions and must also disclose whether any of Parent's prior proposals or indications of interest mentioned management retention.

65.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.   This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

66.     The omission of this information renders the statements in the "Opinion of Centerview Partners LLC, Financial Advisor to ARMO," "Arrangements between ARMO and its Executive Officers, Directors and Affiliates" and "Potential for Future Arrangements" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

67.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.   Absent disclosure of the foregoing material information prior to the expiration of the Offer, Plaintiff and the other ARMO stockholders will be unable to make a fully-informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of
Section 14(d) of the Exchange Act and SEC Rule 14d-9**

68.     Plaintiff repeats all previous allegations as if set forth in full.

69.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting ARMO stockholders to tender their shares in the Offer.

70.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

71.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

72.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

73.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Company's stockholders, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Offer.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **COUNT II**

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

74.     Plaintiff repeats all previous allegations as if set forth in full.

75.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Transaction.

76.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender her shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

77.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

78.     Plaintiff repeats all previous allegations as if set forth in full.

79.     The Individual Defendants acted as controlling persons of ARMO within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of ARMO and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

80.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

82.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

83.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of ARMO, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

//

//

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable

Dated: May 29, 2018                    **WEISSLAW LLP**
                                        Joel E. Elkins

                                        By:

                                        Joel E. Elkins
                                        9107 Wilshire Blvd., Suite 450
                                        Beverly Hills, CA 90210
                                        Telephone:  310/208-2800
                                        Facsimile:   310/209-2348
                                                -and-
                                        Richard A. Acocelli
                                        1500 Broadway, 16th Floor
                                        New York, NY  10036
                                        Telephone: 212/682-3025
                                        Facsimile:  212/682-3010


                                        *Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS